**DATA LINE CORP., et al., Appellees,**

v.

**MICRO TECHNOLOGIES,
INC., Appellant.**

**Appeal No. 85–2710.**

United States Court of Appeals,
Federal Circuit.

March 2, 1987.

Gregory D. Hoffmann, Green, Kanefield and Hoffmann, St. Louis, Mo., argued for appellant. With him on the brief was Lee E. Bailey.

Mark E. Goodman, Rosenblum, Goldenhersh, Silverstein and Zafft, of St. Louis, Mo., argued for appellees.

Before FRIEDMAN, Circuit Judge, BALDWIN, Senior Circuit Judge,* and BISSELL, Circuit Judge.

BALDWIN, Senior Circuit Judge.

This is an appeal of the judgment of the United States District Court for the Eastern District of Missouri, Eastern Division, holding U.S. Patent No. 4,245,343 issued to Ronald G. Frey (Frey patent) and assigned to Data Line Corporation, valid and infringed, permanently enjoining Micro Technologies, Inc. from further infringement, and

dismissing defendant/appellant's counterclaims for attempted monopolization, conspiracy, abuse of process, defamation, and intentional interference with business relationships. Trial was to a jury over a seven day period in April of 1985. On April 17, 1985, the jury returned a special verdict, finding the patent valid and literally infringed. The trial court entered judgment on the verdict without comment. Micro Technologies appeals. We affirm.

## Background

The Frey patent involves a device used in connection with computerized cash registers in department stores. The cash registers in many department stores are a computer system which has a main controller and a number of data terminals located at various check-out stands. The data terminals are all connected in a series loop with the main controller. One problem with having so many interconnected terminals is that when one does not work, none of them work, and pinpointing the failure is tedious. Claim 1 of the Frey patent sets forth a system that automatically isolates the terminals that have failed from those that work and quickly restores service to the working terminals:

1. An automatic shunt system for bypassing a data terminal having input terminals connected to an input data cable and output terminals for supplying output data comprising:

means for sensing the presence of [sic, or] absence of output data at said output data terminals; and

switching means responsive to an output signal of said sensing means

for connecting said output data terminals to an output data cable only when data is present at said output data terminals, and

for connecting said input data cable to said output data cable when data is absent at said output data terminals. [Paragraphing ours.]

---

* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

The accused device, Micro Technologies' LMS 3650, operates by way of a system which automatically bypasses malfunctioning data terminals and restores service to the remainder. Data Line argues that the LMS system, as shown by Micro Technologies' own basic wiring diagrams, contains all the elements of claim 1 of the Frey patent. Micro Technologies argues that the LMS operates in a radically different fashion from claim 1, and so does not infringe.

It is undisputed that the LMS 3650 system has features in addition to those claimed by the Frey patent. Fig. 3 of the Frey patent, the embodiment both parties agree is closest to the accused device, shows

**FIG.3**

a controller (central data processor), a sensor (S) for each terminal (T) and its bypass switches (BP) mounted at a central panel, and four terminals at various locations. The LMS 3650 has a controller, one sensor (flag and level detector), another sensor (shown as separate blocks: microprocessor, test message generator, test message receiver) with a multiplex switching device, or multiplexor (transmit and receive selector), and terminals at various locations.

# Micro Technologies LMS 3650

Operating phase

---

Under claim 1 of the Frey patent, when absence of data is sensed, a switch is thrown and the terminal is cut out of the loop. When absence of data is detected by the LMS 3650, a switch is thrown and all the terminals are cut off from the controller. Then the controller is tested, using the flag and level detector. If the controller is functional, then the sensor with the multiplexor tests each terminal for absence of data, and according to Micro Technologies, other things. Micro Technologies argues, essentially, that (1) the LMS 3650 does not meet all the elements of the Frey claims because it does not have the claimed sensing means or switching means, and (2)

the LMS 3650 does not work according to claim 1 because it pretests the controller, tests each terminal in sequence, and runs a number of tests aside from mere absence of data on each terminal before returning the terminals to service.

### Issues

1. Did the trial court abuse its discretion in denying Micro Technologies' motion for new trial?

2. Did the trial court err by refusing to grant JNOV on the issue of literal infringement?

### OPINION

#### Standard of Review

This is an appeal after denial of combined motions for JNOV and new trial. For JNOV, appellant must show either (1) that the jury's presumed or express findings are not supported by substantial evidence or, (2) if the jury's findings were supported by substantial evidence, that the legal conclusions implied from the verdict cannot be supported by those findings. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed. Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). The motion for new trial is reviewed for abuse of discretion. *Bio-Rad Laboratories v. Nicolet Instrument Corp.*, 739 F.2d 604, 607, 222 USPQ 654, 657 (Fed. Cir.), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984). The standard of review for challenged jury instructions is prejudicial legal error. *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 756 F.2d 1556, 1558, 225 USPQ 253, 255 (Fed. Cir.1985).

Micro Technologies advances the theory that this court should review the record de novo because the trial court failed to determine the scope and construction of claim 1. The basis for this contention is that the trial court denied the motions for directed verdict, JNOV and new trial without comment. The court's failure to make comment is not error, nor does it change our standard of review. *See Bio-Rad Labora-*

*tories. v. Nicolet Instrument Corp.*, 739 F.2d at 607, 222 USPQ at 656–57.

#### Denial Of Motion For New Trial

##### (a) Incorrect Jury Instruction

Micro Technologies contends that the trial court committed prejudicial error by submitting instruction # 17, quoted below, to the jury:

> The specification of the patent must be sufficiently explicit and complete to enable one skilled in the art to practice the invention, while a claim defines only that which the inventor regards as his invention. An accused infringer cannot argue that claim 1 must include a limitation found in the specification. (Instruction 17, App. A–81).

Micro Technologies objected at trial to the charge on the ground that the instruction misstates the purpose of a patent specification. On appeal, Micro Technologies concedes that "[t]he instruction, as far as it goes, is correct," but contends that "it does not go far enough." Micro Technologies argues that although limitations in the specification cannot be read into the claims, instruction No. 17 was misleading because it failed to inform the jury that it is permissible to refer to the specification in interpreting the claims. Micro Technologies, however, did not request a supplemental instruction containing that statement and cannot now complain that the court failed to give an instruction that it was not requested to give. On this basis we find no error in denial of the motion for new trial.

##### (b) Expert Testimony

Micro Technologies argues that the trial court erred by allowing the introduction of incompetent expert testimony. This argument is grounded on the failure of Data Line's expert witnesses to physically inspect the LMS 3650, and their inability to identify certain of its schematic drawings, read its source code, and to describe details of its test phase.

The jury was presented with evidence that physical inspection of the LMS 3650 would be a useless undertaking; that

the pertinent evidence was several different schematic drawings of the LMS 3650 from various sources; and evidence that certain drawings and the source code (a two inch thick pile of computer paper with instructions in machine language) were not the best evidence concerning the operation of the LMS 3650. We are satisfied that the trial court could have concluded that Data Line's expert witnesses were competent, and therefore that the jury could have relied on their testimony to establish infringement. The trial court did not abuse its discretion by refusing to grant a motion for new trial based on defendant's disagreement with the testimony.

### Denial Of Motion For JNOV

Micro Technologies raises a number of arguments to support its position that no reasonable jury could have found that the accused LMS 3650 literally infringes claim 1 of the Frey patent.

#### Preamble

█ Micro Technologies argues that, in accordance with the preamble, "[a]n automatic shunt system for bypassing a data terminal", construction of claim 1 should be limited to systems which require that each terminal, respectively, be supplied with means for both sensing data and switching into and out of the loop. To the contrary, the preamble simply states that a system is being claimed and its purpose is to bypass a data terminal. The claim is not limited as to the number of terminals in the system.

#### Means plus function limitations

Micro Technologies argues that the limitation "means for sensing the presence or absence of output data at said output data terminals" requires a separate data sensor for each terminal in order to establish literal infringement. It bases its argument principally on the drawings of the patent, which uniformly show each terminal accompanied by its own switches and sensor. The jury was given instructions with respect to literal infringement, but not the doctrine of equivalents. The jury verdict, therefore, cannot stand unless the accused device literally infringes the claim.

Construction of this limitation, written in "means plus function" form, is governed by 35 U.S.C. § 112, para. 6:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Congress has provided this statute as a specific instruction on interpretation of this type of claim which otherwise might be held to be indefinite. Thus, the provision excludes some means which perform the specified function from *literally* satisfying the claim limitation. On the other hand, the provision precludes an interpretation that construes the means-plus-function limitation to cover *only* the means disclosed in the specification. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574, 225 USPQ 236, 238 (Fed. Cir.1985). If all other limitations in such a claim are literally met, and the accused device is shown to contain an equivalent of the structure which was identified in the means-plus-function limitation of the claim and disclosed in the specification, infringement is said to be "literal" as distinguished from infringement under the doctrine of equivalents. *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 862, 226 USPQ 402, 408 (Fed.Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986). *See also Palumbo v. Don-Joy Co.*, 762 F.2d 969, 975, 226 USPQ 5, 8–9 (1985). Therefore, where a claim sets forth a means for performing a specific function, without reciting any specific structure for performing that function, the structure disclosed in the specification must be considered, and the patent claim construed to cover both the disclosed structure and equivalents thereof. *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 731 F.2d 840, 848, 221 USPQ 657, 663 (Fed.Cir.1984), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1985).

Thus, to find the scope of the limitation "means for sensing," we look to the specifi-

cation to identify the means that senses the presence or absence of output data at said output data terminals, and its equivalents. The issue here is whether a reasonable jury could have found the LMS 3650 system to contain an equivalent to the "means for sensing" disclosed in the Frey patent.

 Micro Technologies argues that the LMS 3650 system does not contain an equivalent because it uses a single sensor that is switched sequentially to each terminal by use of a multiplexor. The jury had before it Fig. 3 of the Frey patent, which shows the data sensors mounted at a central panel. The jury heard testimony by expert witnesses that a single sensor accompanied by the right switching mechanism is equivalent to a sensor at each terminal, that the interchangeability of the two was well known, and that the inventor himself used a multiplexor in commercializing the invention. We conclude that a reasonable jury could have found that a single sensor with multiplex switching is the equivalent of multiple sensors with multiple switches, and that these are within the scope of the limitation "means for sensing" in claim 1.

 Micro Technologies argues that the "switching means" element of claim 1 is not present in the LMS 3650, and that the "uncontroverted and undisputed evidence is that the operation and structure of the LMS 3650 is radically different than the operation and structure required by the claim." The jury was presented evidence in the form of exhibits and testimony that the bypass circuitry of the Frey patent and that of the accused device is the same but for the presence of additional switching in the LMS 3650 that allows for connection to the testing subloop (discussed *infra:* additional features). Other evidence showed that the LMS in operation uses circuitry equivalent to that disclosed in the patent, except that a single sensor is switched to the various cash registers sequentially by use of a multiplexor (discussed *supra*). We have carefully reviewed the record and conclude that a reasonable jury could have found the "switching means" limitation of claim 1 is present in the accused device.

*Additional Features*

 Micro Technologies argues that the LMS 3650 system is characterized by additional features which cause it to operate in a radically different fashion from the terms of claim 1. The LMS 3650 conducts a preliminary test on the central controller, conducts several tests individually on each cash register, and undertakes a series of steps when a problem is detected. Data Line has countered with a step-by-step infringement analysis, identifying each separate limitation on the LMS 3650. *See Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481, 221 USPQ 649, 653 (Fed.Cir. 1984). Data Line contends that because the limitations of the claims are met, the additional features do not avoid infringement. *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 731 F.2d 840, 848, 221 USPQ 657, 663–64 (Fed.Cir.1984), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1985). We are satisfied that a reasonable jury could have concluded that these additional features do not produce a "radically different" system and therefore are not inconsistent with the determination of infringement.

We have considered Micro Technologies' other arguments and find them without merit. The decision below is *affirmed.*

*AFFIRMED.*