1 F.3d 1253
 28 U.S.P.Q.2d 1477
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MICROSOFT CORPORATION, Plaintiff-Appellee,
v.
IQ TECHNOLOGIES, INC., Defendant-Appellant.
 No. 92-1534.
 United States Court of Appeals, Federal Circuit.
 June 30, 1993.
Rehearing Denied Aug. 5, 1993.
 
 Before ARCHER, Circuit Judge, COWEN, Senior Circuit Judge, and MICHEL, Circuit Judge.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 IQ Technologies, Inc. appeals from the June 5, 1992 order of the United States District Court for the Western District of Washington, No. C91-941D, granting Microsoft Corp. summary judgment of noninfringement. We affirm.
 
 DISCUSSION
 
 2
 A. Microsoft brought the appealed from action seeking a declaratory judgment that its "mouse" device did not infringe any claims of United States Patent No. 4,631,698 (the '698 patent) to J.F. Walsh and W.P. Dean, entitled "Interface Apparatus," and assigned to IQ Technologies. IQ Technologies denied Microsoft's allegation of noninfringement and counterclaimed for, inter alia, direct and active inducement of infringement of the '698 patent. Microsoft moved for summary judgment of noninfringement of the '698 patent. IQ Technologies defended the summary judgment motion arguing that the mouse literally and equivalently infringes independent claims 22, 23, and 28 of the '698 patent. The district court granted Microsoft's motion for summary judgment of noninfringement of the '698 patent, holding that no genuine issue of fact precluded a legal determination that contested claims 22, 23, and 28 were not infringed. IQ Technologies appeals.
 
 
 3
 B. Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the propriety of summary judgment, credibility determinations may not be made, and the evidence must be viewed favorably to the nonmovant, with doubts resolved and reasonable inferences drawn in its favor. SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1116, 227 USPQ 577, 581-82 (Fed.Cir.1985) (in banc). We review de novo the grant of summary judgment.
 
 
 4
 Determining whether a patent is infringed involves two inquiries: (1) interpreting the claims; and (2) comparing the properly interpreted claims to the accused device. Read Corp. v. Portec, Inc., 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). Claims are construed as a matter of law by the district court, and the construction given the claims is reviewed de novo by this court on appeal. See id. at 822-23, 23 USPQ2d at 1432. The comparison of the properly construed claims, the ultimate question of infringement, is a matter of fact. Lemelson v. United States, 752 F.2d 1538, 1547, 224 USPQ 526, 530 (Fed.Cir.1985). The patentee bears the burden of proving infringement. Thus, an accused infringer "is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure in the accused devices." Johnston v. IVAC Corp., 885 F.2d 1574, 1578, 12 USPQ2d 1382, 1384 (Fed.Cir.1989).
 
 
 5
 C. The district court held that the accused internal circuitry of Microsoft's mouse failed to meet, inter alia, the "connector means" limitations of claims 22, 23, and 28.[1] Based on the language of the claims and specification, and testimony of IQ Technologies' witnesses, the district court construed "connector means" as used in the claims to mean "components, either male or female, which mate with like components of the opposite gender in order to (1) provide an electrical connection and (2) allow the user to quickly attach and remove the interface apparatus." Order at 11-12.
 
 
 6
 The parties agree that the mouse's allegedly infringing internal circuitry is attached to the mouse's alleged computer via pads from the mouse's circuitry soldered to pins from the mouse's computer. IQ Technologies takes the position that a set of pads is a "connector means" within claims 22, 23, and 28. It asserts that the "type of connectors is immaterial to the '698" patent, Br. for Appellant at 21; see id. at 10, 22, 45, and argues that "connector means" covers any device that electrically connects computer or peripheral devices, see id. at 22-23, 44.
 
 
 7
 IQ Technologies' construction of the claims, however, runs afoul of 35 U.S.C. Sec. 112, paragraph 6, which limits the literal scope of a means plus function limitation of a claim to the structure described in the specification and equivalents thereof. See Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 933-34, 4 USPQ2d 1737, 1738-39 (Fed.Cir.1987) (in banc) (rejecting the same argument made here). The '698 patent claims "connector means for electrical connection." It is impermissible to define "connector means" solely by the claimed function--viz., any structure for electrical connection. The only structure actually described in the patent corresponding to connector means is male-female type plugs.[2] We therefore reject IQ Technologies' overbroad definition of connector means, and conclude that, as described in the specification and claimed, "connector means" literally are male-female type plugs and equivalents thereof for electrical connection.
 
 
 8
 IQ Technologies further contends that the expressly claimed "connector means" structure should be deemed "immaterial" to the patent because the patent is concerned with an "electrical apparatus" not a "mechanical apparatus." The place to delete a claim limitation believed to be immaterial to patentability is in the Patent and Trademark Office during prosecution. "[C]ourts cannot alter what the patentee has chosen to claim as his invention...." Intervet Am., Inc. v. Kee-Vet Labs., Inc., 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989).
 
 
 9
 In this case, IQ Technologies has taken the above-rejected extreme position. As a result it has not presented argument supported by record evidence that pads, if not "connector means" as disclosed in the '698 patent, are nevertheless an equivalent of the described structure. Compare Data Line Corp. v. Micro Technologies, Inc., 813 F.2d 1196, 1201-02, 1 USPQ2d 2052, 2055-56 (Fed.Cir.1987) (substantial evidence of equivalence). Thus, IQ Technologies presents no genuine dispute as to equivalence under 35 U.S.C. Sec. 112, paragraph 6. Furthermore, although IQ Technologies has sought to raise the doctrine of equivalents as a basis for infringement, again it only contends erroneously that the connector means limitation is satisfied by any structure making an electrical connection. See, e.g., Br. for Appellant at 26 (premising doctrine of equivalents argument on literal infringement arguments made at 23-23, 44). Thus, rather than arguing as it must that pads are an equivalent of connector means, see Becton Dickinson and Co. v. C.R. Bard, Inc., 922 F.2d 792, 797-99, 17 USPQ2d 1097, 1101 (Fed.Cir.1990), IQ Technologies merely restates its basic and faulty literal infringement argument, and thereby presents no genuine dispute as to equivalence under the doctrine of equivalents.
 
 
 10
 Because there is no dispute in this case that the pads of the accused devices are outside the literal scope of the properly construed claims and the evidence does not present a genuine dispute of material fact that pads are equivalent to the claimed "connector means," Microsoft is entitled to judgment of noninfringement as a matter of law. Accordingly the grant of summary judgment by the district court is affirmed.
 
 
 
 [1]
 Claim 28, representative of the asserted claims, provides:
 An interface apparatus for interconnecting computers and peripheral devices with external connectors having open inputs on handshake or control signal lines, comprising:
 first connector means for electrical connection with the signal lines of a first computer or peripheral device external conductor [sic, connector];
 second connector means for electrical connection with the signal lines of a second computer or peripheral device external connector;
 a plurality of conductive paths extending between said first and second connector means, each path electrically interconnecting at least one designated handshake or control signal line of said first connector means with at least one designated handshake or control signal line of said second connector means; and
 enabling means responsive to an enable signal on at least one of said conductive paths for supplying a current-limited enable signal on any other of said conductive paths having an open input on one of the handshake or control signal lines corresponding thereto, said current-limited enable signal being of substantially constant current and being substantially independent of variations of the voltage of said enable signal, whereby open inputs on handshake and control signal lines are supplied with enabling signals so as to provide a function interface between said external connectors. [Emphasis added.]
 
 
 [2]
 IQ Technologies makes much of the specification's suggestion to "tailor an interface cable assembly [ ] to a particular piece of equipment" by providing "specialized connectors." That a connector may be specialized does not, as IQ Technologies would have it, permit a connector to be anything. This language thus does not answer the critical question: what structure described in the specification corresponds to "connector means"?