**Arthur L. SERRANO and Andrew W. Holman, Plaintiffs–Appellants,**

v.

**TELULAR CORPORATION, Defendant–Appellee.**

No. 96–1308.

United States Court of Appeals, Federal Circuit.

April 25, 1997.

Michael J. Emling, Long Beach, California, argued for plaintiffs-appellants. Of counsel was Philip H. Haymond.

Stephen J. Cassin, Hamman & Benn, Chicago, Illinois, argued for defendant-appellee. With him on the brief were Marvin N. Benn and Dawn M. Cassie.

Before MAYER, LOURIE, and CLEVENGER, Circuit Judges.

Opinion for the court filed by Circuit Judge LOURIE. Concurring opinion filed by Circuit Judge MAYER.

LOURIE, Circuit Judge.

Arthur L. Serrano and Andrew W. Holman (collectively "Serrano") appeal from the summary judgment of the United States District Court for the Central District of California that U.S. Patents 4,775,997 and 4,922,517 were infringed by Serrano. *Serrano v. Telular Corp.*, No. 94–CV–1272 (C.D.Cal. July 17, 1995). They also appeal from the court's rulings granting Telular Corporation's motion to strike Serrano's motion for reconsideration and granting Telular's petition for attorney fees. *Serrano v. Telular Corp.*, No. 94–CV–1272 (C.D.Cal. Feb. 9, 1996) (order granting Telular's petition for attorney fees); *Serrano v. Telular Corp.*, No. 94–CV–1272 (C.D.Cal. Nov. 17, 1995) (order granting Telular's motion to strike). Because the district court did not err in its judgment concerning infringement, and did not abuse its discretion by granting the motion to strike and the petition for attorney fees, we affirm.

## BACKGROUND

Telular owns the '997 and '517 patents, both of which issued from continuations of the application that led to U.S. Patent 4,658,096. They contain essentially the same disclosure. The patents concern a method and apparatus for interfacing a communications device such as a standard rotary dial telephone, touch-tone telephone, or modem with a radio transceiver such as a cellular telephone. The invention receives tone-dial or pulse-dial inputs from the standard telephone and converts them into a serial data stream for storage in the radio transceiver and for subsequent transmission. The apparatus automatically determines when the last digit is dialed from the telephone and in response provides a send signal to the transceiver. The '517 patent claims an apparatus, claim 1 reading in part as follows:

1. A system for interfacing a telephone communications-type device which is capable of providing touch-tone/rotary dial-type telephone signals with a cellular radio transceiver used in a telephone communication system wherein the cellular transceiver is capable of radio communication with a remote cellular radio transmitter-receiver system that is part of a telephone network, wherein the system comprises:

. . . . .

determination-means coupled with the telephone number digital conversion means for automatically determining the last digit of the group of telephone digits provided at the transceiver coupling means; and

send signal means coupled with said determination means for providing a send signal to the cellular transceiver in response to said determination means' determination that the last digit of the telephone number has been input.

The '997 patent claims a method, claim 1 of that patent reading in part as follows:

1. A method of interfacing a telephone communications-type device which is capable of providing a touch-tone/rotary dial-type telephone signal with a radio transceiver used in a telephone communication system wherein the transceiver is capable of radio communication with a remote radio transmitter-receiver system that is part of a telephone network, said method comprising:

. . . . .

said step of coupling further comprising automatically determining at least the last-dialed number of the telephone number dialed on the telephone communications-type device; and

sending each digitally-converted number formed by said step of converting to the transceiver for subsequent transmittal.

As support for the "determination means" and the "determining" step, the specification discloses a preferred embodiment using digit analysis, which involves analyzing the first few digits of a telephone number to determine how many digits will be dialed. For example, if the first digit is a 1 and the third digit is a 1 or 0, typically the middle digit of an area code, the system assumes that the call is an out-of-area long distance call and it allows eleven digits to be dialed before initiating a send signal. After analyzing the first few digits of the call to determine how many

digits will be dialed, the system uses a digit counter to determine when the last digit is dialed. The specification also discloses that in international dialing, in a call prefixed by the numbers "011," one cannot assume that a predetermined number of digits will be dialed. In that case, the system uses a timing operation to determine when the last digit is dialed. In particular, it generates a send signal when a three-second gap is detected after a digit is dialed. Both the digit analysis and time-out feature are disclosed as being implemented in discrete logic circuitry.

Serrano sold products known as the DialJack and MiniDial devices, which used a microprocessor-based system to interface a standard telephone with a radio transceiver. There are three types of devices in question. The MiniDial version I and DialJack devices generated a send signal at the expiration of a four-second timer that began with the entry of any digit. The MiniDial version II devices generated a send signal at the expiration of a timer triggered by an off-hook condition. The Motorola-configured MiniDial device transmitted digits to a particular type of Motorola telephone as the digits were dialed and converted.

Telular notified Serrano that it believed that the DialJack and MiniDial devices infringed the '997 and '517 patents. In response, Serrano filed a declaratory judgment action against Telular, seeking a determination of invalidity, noninfringement, and unenforceability of the patents. Telular counterclaimed for infringement. In a summary judgment, the district court construed the "determination means" limitation to include both the use of digit analysis and a time-out feature, finding that the specifications disclose circuitry for performing digit analysis and a timer for a time-out determination. The court also found that the patentees did not limit the claimed invention during prosecution of the patent applications to exclude the use of a time-out feature to determine the end of dialing. In addition, the court found that the specification encompasses use of a microprocessor in addition to the disclosed discrete logic circuitry.

The court thus concluded that the DialJack device and the MiniDial version I and II devices literally infringed the asserted claims. With respect to the Motorola-configured MiniDial device, the court found that the specification indicates that the inventors contemplated that certain features of the device could be placed in the transceiver, as is the case with the Motorola telephone. Hence, the court concluded that those devices infringed claim 1 of the '997 patent. The court also found that the infringement was willful, based upon evidence of Serrano's having copied the patented invention and having done so without an opinion of invalidity or noninfringement.

Serrano moved for reconsideration, alleging in his motion that the patents are invalid based upon newly discovered evidence. In opposition, Telular filed a motion to strike Serrano's motion. The court granted the motion to strike and it also granted Telular's petition for attorney fees. After deciding on summary judgment in favor of Telular on liability, the district court made findings of fact and arrived at conclusions of law concerning other issues not on appeal. The parties stipulated to the amount of damages as compensation for the infringement and the court entered final judgment. Serrano now appeals to this court.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir. 1989). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir. 1995). We review *de novo* a district court's grant of summary judgment. *Conroy v. Ree-*

bok Int'l, Ltd., 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).

## A. Infringement

■ Determining whether a patent claim has been infringed requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Claim construction is a question of law, which we review *de novo. Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (in banc), *aff'd*, — U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996).

Claims 1–4 of the '997 patent and claim 1 of the '517 patent are now before us on appeal. Serrano argues that the district court misconstrued the claims. He argues that the "determination" and "determining" limitations of the claims are not met by the accused DialJack device and the MiniDial version I and II devices. According to Serrano, the "determination means" and "determining" step limitations require identifying the last digit dialed, based upon a dictionary definition of the word "determining." Serrano therefore argues that the accused devices do not infringe because they do not identify the last-dialed digit. Telular responds that the "determination means" and "determining" step limitations determine when the last digit is dialed, but do not necessarily identify that digit. Telular refers to the preferred embodiment which, for example, only performs digit analysis on the first few dialed digits and then counts digits to determine the last-dialed digit.

■ We first address claim 1 of the '517 patent. The "determination means" limitation of that claim recites a means for determining the last digit without reciting definite structure in support of that function, and that limitation therefore is a "means plus function" limitation subject to the requirements of 35 U.S.C. § 112, ¶ 6. *See Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 531, 41 USPQ2d 1001, 1006 (Fed.Cir.1996) (stating

that to invoke section 112, ¶ 6, a "means plus function" limitation must not recite definite structure for performing the described function); *see also Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1584, 39 USPQ2d 1783, 1787 (Fed.Cir.1996) (stating that use of the phrase "means for" generally invokes section 112, ¶ 6). "Literal infringement of a claim containing a means clause requires that the accused device perform the identical function as that identified in the means clause and do so with structure which is the same as or equivalent to that disclosed in the specification." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547, 41 USPQ2d 1238, 1245–46 (Fed.Cir.1997).

■ We do not agree with Serrano that the "determination means" of claim 1 refers only to *identification* of the last-dialed digit. The specification states that "[t]he instant system determines *when* the last digit, or numeral, of a telephone number has been dialed." '517 patent, col. 10, lines 3–4 (emphasis added). That statement is consistent with the summary of the invention, which states that "[a]fter all the digits are dialed, the interface system automatically determines *when* the last numeral or digit has occurred." *Id.* at col. 3, lines 3–5 (emphasis added). It is clear from the specification that the invention determines when the last digit is dialed and does not identify that digit. Serrano's proposed dictionary definition thus is inconsistent with the specification. The inventors' definition and explanation of the meaning of the word "determining," as evidenced by the specification, controls the interpretation of that claim term. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576–77 (Fed.Cir. 1996) (stating that a patentee may choose his or her own definition for claim terms, if that definition is clear from the patent or file history). Therefore, the function of the "determination means" is to determine when the last digit or number is dialed rather than to identify the last digit.

Serrano next argues that the "determination means" should be limited to structure that accomplishes digit analysis. We do not agree. Although the specifications disclose circuitry for performing digit analysis as

structure for determining a last-dialed digit, they also disclose use of a timer to determine when that digit is dialed. Specifically, the specifications state that "[i]n international dialing, one cannot assume a predetermined number of digits and thus a timing operation has to be relied upon." '517 patent, col. 10, lines 35–37. Serrano's proposed construction of the "determination means" as requiring structure for performing digit analysis is thus overly limiting and is contrary to the statement of multiple structures disclosed in the specification. *See Data Line Corp. v. Micro Techs., Inc.*, 813 F.2d 1196, 1202, 1 USPQ2d 2052, 2055 (Fed.Cir.1987) (stating that a means clause must be construed to cover the disclosed structure and equivalents thereof). Disclosed structure includes that which is described in a patent specification, including any alternative structures identified.

■ Serrano also argues that the structure for implementing the "determination means" should be limited to use of discrete logic circuitry, which is used in the embodiment disclosed in the specification. We do not agree. Although the specification discloses such circuitry as a preferred embodiment, it also states that "[i]t should be recognized to those of ordinary skill in the art that a microprocessor-based system could also be used wherein the logical decisions are configured in software." '517 patent, col. 10, lines 46–50. Thus, the specification clearly evidences that the invention is not limited to use of discrete logic circuitry and may alternatively be implemented using a microprocessor operating under software control. *See id.* Accordingly, we construe the "determination means" limitation to mean the function of determining when the last digit or number is dialed and to permit structure that includes digit analysis or use of a time-out feature, being implemented in discrete logic or with a microprocessor operating under software control, and equivalents of such structures. The accused Dial Jack device and MiniDial version I and II devices undisputedly use a microprocessor-based system that determine when the last digit is dialed using a time-out feature. There is thus no genuine issue of material fact as to whether they are within the scope of claim 1 of the '517 patent.

■ We next address method claim 1 of the '997 patent. It includes a determining step rather than a determination means, but it is not drafted in "step plus function" form. That is because it does not recite a function. *See* 35 U.S.C. § 112, ¶ 6 (1994). Rather, it recites only the act of determining a last-dialed digit. Therefore, we must simply apply the claim language to the accused devices free from the limiting requirements of section 112, ¶ 6. It is clear from the specification that the determining step determines *when* a last digit is dialed, as explained above. The accused Dial Jack device and MiniDial version I and II devices perform that step, which is the only limitation arguably in question. Serrano also does not dispute that the accused devices contain the limitations of the asserted dependent claims of the '997 patent. There is thus no genuine issue of material fact concerning whether the accused Dial Jack device and MiniDial version I and II devices are within the scope of any of the asserted claims of the '997 patent.

■ Finally, Serrano argues that the Motorola-configured MiniDial device does not infringe claim 1 of the '997 patent because it lacks a "determining" step. Telular responds that, even if that device does not directly infringe the claim, it contributorily infringes it and therefore the district court's conclusion of direct infringement was harmless error. We agree with Telular that the Motorola-configured MiniDial device contributorily infringes claim 1 of the '997 patent.

■ Liability for contributory infringement includes one who "sells within the United States ... a component of a patented machine ... knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c) (1994). There can be no contributory infringement without direct infringement. *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687, 231 USPQ 474, 477 (Fed.Cir.1986). The district court concluded that the Motorola-configured

MiniDial device in combination with the Motorola Microtac transceiver uses a time-out feature for determining the last digit dialed, thereby satisfying the "determining" step. The court also concluded that the combination of the devices satisfies the "sending" step. Serrano has not shown that the district court erred in finding that there was no genuine issue of material fact with respect to these conclusions.

Serrano also argues that, because of statements made during the prosecution of the '997 patent, claim 1 must be interpreted to require generation of a send signal. He argues that because the accused device does not generate such a signal, it cannot infringe the claim. We do not agree. The statements from the file history cited by Serrano appear in an information disclosure statement submitting prior art to the PTO. In that statement, the patentee distinguished the invention over the submitted prior art by stating, *inter alia*, that the prior art does not disclose an "automatic send signal means." Although certain claims of the '997 patent require generation of a "send" signal, claim 1 does not recite such a limitation. The patentee's statement concerning whether the prior art discloses a "send" signal means is relevant only to those claims which require the generation of a such a signal, and those claims are not asserted here. In contrast, claim 1 requires sending the digits without specifying use of a "send" signal for accomplishing that act. Although statements in a file history may of course be used to explain and potentially limit the meaning of claim limitations, there is no basis here for the interpretation argued by Serrano. The statements in question cannot be used to add an entirely new limitation to the claim. *See D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1574 n. 2, 225 USPQ 236, 238 n. 2 (Fed.Cir. 1985) (stating that limitations from the specification or file history cannot be read into a claim where there is no basis for doing so). Accordingly, claim 1, properly construed, does not require generation of a "send" signal.

The court did err in its conclusion of direct infringement. As pointed out by Serrano, the accused product indeed does not contain all the limitations of claim 1. However, the accused device in combination with the Microtac transceiver does contain all the limitations of the asserted claim. Moreover, there is undisputed evidence of record that the Motorola-configured MiniDial device was designed specifically for use with that transceiver and that it was not a staple article of commerce. Although the district court erred in concluding that the Motorola-configured MiniDial device directly infringes claim 1, we conclude that the device nonetheless contributorily infringes the claim. Because the district court's error did not affect the correctness of its decision, which is that Serrano is liable for infringement, that error was harmless. *See* Fed.R.Civ.P. 61.

## B. *Motion for Reconsideration*

The district court granted Telular's motion to strike Serrano's motion for reconsideration because it did not comply with the court's Local Rule 7.16. We review matters not within our exclusive jurisdiction under the applicable law of the regional circuit, in this case the Ninth Circuit. *Cochran Consulting, Inc. v. Uwatec USA, Inc.,* 102 F.3d 1224, 1228 n. 3, 41 USPQ2d 1161, 1164 n. 3 (Fed.Cir.1996). Local Rule 7.16 required Serrano to show that he could not through reasonable diligence have known of the documents in question before the entry of judgment and that they present a material difference in fact from those presented to the court prior to judgment. *See Hinton v. Pacific Enterprises,* 5 F.3d 391, 393 n. 2 (9th Cir.1993). We review a district court's ruling on a motion for reconsideration under Local Rule 7.16 for an abuse of discretion. *Id.* at 395.

Serrano states in his principal brief that he received the evidence in question, certain Finnish documents, on May 30, 1995, and that translation of the documents into English was not completed until June 21, 1995. He argues that significant time was required to translate the documents in order to ascertain their significance and that, accordingly, his delay in submitting them to the court was not unreasonable. However, Serrano does not explain why he did not at least bring the documents to the district court's

attention and request time to have them translated during the court's hearing on June 1, 1995 concerning Telular's motion for summary judgment. At least twice during the hearing the district court asked the parties' counsel if there was "anything else." Serrano's counsel did not cite the Finnish documents. We also note that the documents contain drawings that must have provided an indication of their significance before they were translated. Because Serrano has not met the first requirement of Local Rule 7.16, it is "Finis" for the Finnish documents; we need not address the other requirement of the case law that the documents present a material difference in fact. Accordingly, the district court did not abuse its discretion in granting Telular's motion to strike Serrano's motion for reconsideration.

## C. Attorney Fees

Serrano argues that the district court's findings do not support the conclusion that this is an exceptional case warranting an award of Telular's attorney fees. Serrano asserts that the award was essentially based on the court's finding that he relitigated issues from a previous case in which Serrano was accused of infringing the parent patent. *DNIC Brokerage Co. v. Morrison & Dempsey Communications, Inc.,* 14 USPQ2d 1043 (C.D.Cal.1989), *rev'd,* 960 F.2d 155 (Fed.Cir. 1992) (table).* Telular responds that an award of fees is justified because Serrano did relitigate issues already decided in the *DNIC* case. Telular argues that Serrano caused it to incur additional expense and delay by refusing to stipulate certain facts concerning the issues of inventorship and priority which were previously decided. Telular also cites other litigation misconduct by Serrano, including his initial refusal to voluntarily dismiss the parent patent from his declaratory judgment complaint, even though infringement of that patent had not been asserted.

In an exceptional case, a court may award attorney fees under 35 U.S.C. § 285. Whether attorney fees should be awarded is within the discretion of the district court. *See Seal–Flex, Inc. v. Athletic Track and Court Constr.,* 98 F.3d 1318, 1325, 40 USPQ2d 1450, 1455 (Fed.Cir.1996). We agree with Telular that the district court did not abuse its discretion in granting Telular's petition for attorney fees. The district court cited several examples of Serrano's litigation conduct that resulted in needless expense by Telular. For example, it found that Serrano's conduct required Telular to relitigate issues already decided in the *DNIC* case, and it found that after being previously enjoined from selling infringing products, Serrano began selling the DialJack and MiniDial devices embodying only minor differences over the previous products. Serrano has not shown that the district court's conclusion to award fees to Telular amounts to an abuse of discretion. *See Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1574, 38 USPQ2d 1551, 1558 (Fed.Cir.1996) (stating that litigation misconduct may suffice to make a case exceptional under section 285).

We have considered the parties' other arguments and find that they are either unpersuasive or unnecessary for resolution of this appeal.

## CONCLUSION

The district court did not err in holding that there were no genuine issues of material fact and that Telular was entitled as a matter of law to judgment that the asserted claims of the '997 and '517 patents were infringed by the DialJack device and the MiniDial version I and II devices. The court's error in its conclusion that the Motorola-configured MiniDial device directly infringed claim 1 of the '997 patent was harmless because we conclude that the device contributorily infringed that claim. The district court did not

* In the *DNIC* case, the district court found that the parent patent was not invalid, Morrison & Dempsey Communications, Inc. (M & D) infringed that patent, and Serrano, M & D's president, was not personally liable for the infringement. The court enjoined both M & D and Serrano from further infringement. The only issue on appeal was the appropriateness of the injunction against Serrano. Because Serrano was not personally liable for the infringement, we reversed the injunction against him. *DNIC Brokerage Co. v. Morrison & Dempsey Communications, Inc.,* No. 90–1389, slip op. at 3, 1992 WL 45423 (Fed.Cir. Mar. 12, 1992) (non-precedential opinion).

abuse its discretion in granting Telular's motion to strike Serrano's motion for reconsideration and in granting Telular's petition for attorney fees. Accordingly, we affirm the district court's judgment and its orders granting the motion to strike and the petition for attorney fees.

*AFFIRMED.*

MAYER, Circuit Judge, concurring.

According to the Supreme Court, claim construction is a matter for the judge, and not the jury. *Markman v. Westview Instruments, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1384, 1395, 134 L.Ed.2d 577 (1996). As such, if the claim construction does not require the resolution of disputed material facts, it may be treated as a matter of law and so reviewed by this court. However, where material facts are disputed, claim construction requires resolution of both questions of fact and questions of law, *Markman,* —— U.S. at ——, 116 S.Ct. at 1390 (classifying claim construction as a "mongrel practice"), and

this court may be required to give due deference to the trial court's factual findings. *Metaullics Sys. Co. v. Cooper,* 100 F.3d 938, 939, 40 USPQ2d 1798, 1799 (Fed.Cir.1996); *see* Fed.R.Civ.P. 52(a). In this case, there was remarkable agreement among those skilled in the art—including the inventor and both parties' technical experts—about the equivalence of off-hook and inter-digit time-out methods under 35 U.S.C. § 112(6) (1994) and the last-digit determination methods described in the specification. Thus, there was no call for the district court to make findings of fact about the meaning of disputed limitations en route to its construction of the claims. Accordingly, I agree with the resolution of this case.