**James P. HOWES, Riverside Promotions, Inc. and American Home Workshop Products Corporation, Plaintiffs,**

v.

**ZIRCON CORPORATION, Defendants.**

No. 97 C 5632.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 13, 1998.

---

**959**

James T. Fitzgibbon, David Lesht, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, IL, Ronald Butler, Michael A. Stick, Peter G. Land, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for Plaintiffs.

Grantland Gilbert Drutchas, McDonnell, Boehnen, Hulbert & Berghoff, Ltd., Chicago, IL, Daniel A. Boehnen, McDonnell, Boehnen, Hulbert & Berghoff, Chicago, IL, Justin T. Beck, Thomas E. Rossmeissl, Skjerven, Morrill, MacPherson, San Jose, CA, for Defendant.

*MEMORANDUM OPINION AND ORDER*

ZAGEL, District Judge.

James P. Howes ("Howes"), Riverside Promotions, Inc. ("Riverside") American Home Workshop. Products Corp. ("American") (collectively "the Plaintiffs") sued the Zircon Corporation ("Zircon") for willfully infringing claims 1, 2, 3, 4, 5, and 16 of United States Patent No. 5,396,578 ("the '578 patent"). The '578 patent's subject matter is a voice-recording tape measure. Zircon sells a voice-recording tape measure called the Repeater.

Zircon filed for summary judgment for noninfringement on claims 1, 3, and 16 while challenging the standing of Riverside and American. The Plaintiffs cross-filed for summary judgment on Claim 3 of the '578 patent and on their willful infringement claim. I now deny Zircon's motion for summary judgment for noninfringement, grant the Plaintiffs' motion for summary judgment for infringement on Claim 3, deny the Plaintiffs' motion for willful infringement, and find that Riverside and American have standing as licensees of the '578 patent.

### Uncontested Claims

As a preliminary matter I hold that I have no jurisdiction to address Zircon's motion for summary judgment on claims 1 or 16 of the '578 patent. To be justiciable, there must be a controversy at present and not merely at the time the complaint was filed. *Grain Processing Corp. v. American Maize–Products Co.*, 840 F.2d 902, 905–906 (Fed. Cir.1988). The Plaintiffs no longer allege infringement of claims 1 and 16 and thus no

present case or controversy exists regarding their infringement. Pls. Mot. for Summ.J. of Infringement and Willful Infringement at 1. Therefore I deny Zircon's motion for summary judgment on claims 1 and 16 because I lack jurisdiction over those claims.

## Legal Standard

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Methodist Medical Center of Illinois v. American Medical Sec. Inc.,* 38 F.3d 316, 319 (7th Cir.1994). The court must draw all justifiable inferences in the light most favorable to the opposing party and must resolve any doubt against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## Literal Infringement

■ The patent infringement analysis requires me to take two steps. First, I must properly construe the claim to determine its scope and meaning. This is a question of law. Then, I must compare the properly construed claim to Zircon's device to determine if a question of material fact exists. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1581–82 (Fed.Cir.1996). Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over the scope of a claim, I may decide the question of literal infringement as a matter of law in a motion for summary judgment. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573 (Fed.Cir.1996).

■ The first step, claim construction, involves ascertaining the true meaning and scope of each claim. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir. 1995), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). To determine the proper construction of a claim, I must first look to the intrinsic evidence of record, the patent itself, including the claims, the specifications

and, if in evidence, the prosecution history. *Vitronics,* 90 F.3d at 1582. I am not to rely on extrinsic evidence, such as expert testimony, unless an analysis of the intrinsic evidence alone will not resolve all the ambiguity in a disputed claim term. *Id.* at 1583.

■ This means that, in the first instance, I must look to the words of the claims to define the scope of the Plaintiffs' claims. *Id.* at 1582. In doing so I note that I am to interpret any technical term in a patent document as having the meaning given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning. *Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1578 (Fed.Cir.1996). Thus, a patentee may choose to use terms in a manner other than their ordinary meaning, so long as the special definition of the term is clearly stated in the patent specification or file history. *Vitronics,* 90 F.3d at 1582.

■ Second, I must review the claim's specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. *Id.* Specifications act as a dictionary when they expressly define terms used in the claims or when they define terms by implication. *Id.* Specifications are the single best guide to the meaning of a disputed term. *Vitronics,* 90 F.3d at 1582.

■ As the final source of intrinsic evidence, I may consider the prosecution history. The prosecution history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims. *Id.* The prosecution history limits the claim's terms to exclude any interpretation disclaimed during the patent's prosecution. *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed.Cir.1995).

## Construction of Claim 3 of the '578 Patent Literal Infringement

## The Mode Selector Switch

Zircon claims that Claim 3 [1] of the '578 patent does not read on its Repeater for two reasons. First, Zircon argues that 3(C)(e) requires a sliding mode selector switch movable between a record and a play mode and that the Repeater has neither such a switch nor mode. Second, Zircon maintains that 3(C)(a)'s structure controlling and processing means is not equivalent to the Repeater's controlling and processing structure.

■ Examining the scope of 3(C)(e) first, I find that its plain language, when read in light of the specifications, is not limited to a sliding mode selector switch. Claim 3(C)(e) reads that the audio recording and tape measuring system comprises:

a mode selector switch connected to the circuit controlling and processing means and movable between a RECORD and a PLAY mode, enabling the circuit controlling and processing means to establish the desired operation of the recording circuit.

Zircon argues that the language, "movable between a record and a play mode," requires a slide switch to be read into Claim 3(C)(e) because Claim 2(e), which also defines the mode selector switch, uses "selecting" instead of "movable between." I find that the specifications do not limit the term "movable between" exclusively to the action of a slide switch.

■ In making this determination, I have presumed that different language be-

tween claims signifies a difference in their meaning and scope and that I may interpret claims in light of the specifications that led to the patent. *Tandon Corp. v. U.S. Int'l Trade Comm'n,* 831 F.2d 1017, 1023 (Fed.Cir.1987). However, I note that I cannot read into a claim a limitation that appears only in a specification since the claim, not the specification, measures the invention. *SRI Int'l. v. Matsushita Elec. Corp. of America,* 775 F.2d 1107 (Fed.Cir.1985). Furthermore, two claims which read differently may cover the same subject matter. *Tandon,* 831 F.2d at 1023.

· The specifications state that the mode selector's preferred embodiment "comprises a slide switch which is movable ... between a PLAY position and a RECORD position." This differs from the antecedent basis for Claim 2(e) which calls for a mode selector button for mode selection. Despite this difference I refuse to read a slide switch requirement into Claim 3(e) because the specifications also state that "various alternate switch configurations can be employed...." This specification language clearly indicates that Claim 3(C)(e)'s "movable between" language does not necessarily require a slide switch, but allows for other types of switches.

### The Activation Switch

■ I find that the plain language of Claim 3(C)(e) does not require an activation

---

1. Claim 3 reads as follows:

An audio recording and tape measuring system for enabling the measurement of distance using a measuring tape and enabling the measurements to be orally enunciated and recorded for later use, said· system comprising
A. a housing
B. a measuring tape securely mounted in the housing for being removed therefrom, whenever desired, to any desired length to enable measurements of distances to be made; and
C. an audio signal recording circuit mounted in the housing and construction for receiving and recording audible information and replaying the recorded information upon demand, said circuit comprising
  a. circuit controlling and processing means,
  b. an information storage address
    1. controllably interconnected to the controlling and processing means for receiving signals corresponding to orally enunciated information,
    2. storing said signals therein, and

    3. transmitting, upon demand, stored signals to the circuit controlling and processing means,
  c. a microphone connected to the circuit controlling and processing means and constructed for
    1. receiving an orally enunciated signal corresponding to the desired information to be recorded, and
    2. transmitting the signal to the controlling and processing means for transmission to and retention in the storage address,
  d. output means connected to the circuit controlling and processing means for receiving signals retrieved from the storage address and presenting the stored information as an audible signal corresponding to the stored information, and
  e. a mode selector switch connected to the circuit controlling and processing means and movable between a RECORD and a PLAY mode, enabling the circuit controlling and processing means to establish the desired operation of the recording circuit.

switch that initiates the operation of the recording circuit in the selected mode and is distinct from the mode selector switch. Zircon argues that Claim 3's mode selector switch's primary purpose is to define the operation performed by an activation button. In its preferred embodiment, this dual mode selector and activation switch combination allows one button to perform either record or play function from multiple address locations; a distinct mode selector/activation switch combination requires only one activation button per location. Zircon argues that this differs from the Repeater's design. The Repeater requires both a record and a play button. From a distinct activation switch and mode selector switch requirement, Zircon maintains, it is a short step to find that the Repeater does not infringe on Claim 3(C)(e) because it does not have modes as Claim 3 requires. Unfortunately for Zircon, I find that while the preferred embodiment does have dual mode selector switch/activation switches, the patent is not necessarily so limited. *Transmatic, Inc. v. Gulton Industries Inc.*, 53 F.3d 1270, 1277 (Fed.Cir.1995). For Zircon's argument to be persuasive, I must read distinct activation and mode selector switch requirements into Claim 3.

After careful reading I hold that Claim 3 does not require separate activation and mode selector switches; Claim 5[2] does. Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broader claim. *Transmatic*, 53 F.3d at 1277 (Fed.Cir.1995); *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed.Cir. 1985). Given this legal rule and Claim 3's language, I hold that the Claim 3(C)(e) does not require an activation switch distinct from its mode selector.

### On Demand

■ Claim 3's language requires the recording circuit to be capable of "replaying the recorded information upon demand." Its plain language does not, as Zircon contends, require that a covered device record upon demand. I hold that the on-demand limitation in Claim 3(C) is restricted to a device's play function and does not include the record function.

■ Applying the interpreted claims to the Repeater's uncontested design, I hold that the Repeater has a mode selector switch movable between a record and a play mode within the ambit of Claim 3(C)(e). First, I hold that the Repeater has record and play modes whose selector switches double as function activation buttons; these switches select the Repeater's mode while initiating its record or play function. I hold that the buttons' dual purpose does not remove the Repeater from the 3(C)(e)'s scope because Claim 3 does not require a distinct activation button. Second, I find that these record and play switches are movable from a closed to an open position and therefore satisfy the patent's requirement that they be movable between play and record mode. Again, I find that the initiation of the function with the mode's selection does not prevent the Repeater from falling within Claim 3. Furthermore, I hold that because 3(C)(e) does not require a slide switch mode selector, a record and a play button movable between open and closed positions satisfy the literal language of Claim 3(C)(e)[3]. Finally, the Repeater's record button performs on demand

---

2. Claim 5 reads as follows:
The audio recording and tape measuring system defined in claim 3, wherein said system is further defined as comprising
D. at least one activation switch mounted to the housing for ease of access by the user and constructed for transmitting an activation signal to the circuit controlling and processing means for initiating the operation of the audio signal recording circuit in the selected mode.

3. Zircon argues that because the Repeater has a separate record and play button it falls outside of Claim 3(C)(e). Zircon argues that when both the record and play button are in the open position,

the Repeater is neither in record or in play mode. However the parties' 12M and 12N statement indicates that when the Repeater's record button is in the open position, the Repeater is in the play mode, and when it is in the closed position it is in the record mode. 12M ¶¶ 42–56. Even if the Repeater were between modes when both buttons are in the open position this non-mode state would be analogous to a slide switch left halfway between record and play. Thus, even if this difference were to render literal infringement impossible, the Repeater's record and play buttons serve as equivalents to a single mode selector switch.

as Claim 3 requires; a user can cause the Repeater to record by depressing one button.[4] Thus, Claim 3(C)(e) reads literally on Zircon's Repeater.

### 3(C)(a)'s Controlling and Processing Means

Moving to the second and final contested portion of Claim 3, the parties agree that Claim 3(C)(a) is subject to a means-plus-function analysis governed by 35 U.S.C. § 112 ¶ 6. This analysis requires the Plaintiffs to establish that the Repeater's circuit controlling and processing means performs exactly the same function as the Plaintiffs' claim in the same or equivalent manner. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987). If the exact function is not performed exactly in the accused device then § 112 ¶ 6 does not apply. *Id.* Equivalency of means in performing the exact function as the patent is a question of fact. *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 975 (Fed.Cir.1985). I note if all other limitations of a claim are literally met, and the Repeater contains a structural equivalent identified in the means-plus-function limitations of the claim, the infringement is literal. *Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196 (Fed.Cir.1987).

The parties do not dispute that Zircon's processing means perform the exact function that 3(C)(a) defines. However, the parties disagree as to the means that Claim 3(C)(a) delineates and whether Zircon's repeater control circuitry performs processing and control functions with the exact or equivalent means. Zircon first claims that the Plaintiffs have not adequately disclosed, in the specifications, what structure controls and processes the audio signal. In the alternative Zircon argues that Figure 2 conflicts with the written specifications because Figure 2 indicates that the direct analog storage circuit is separate from the controller.

I find that the Plaintiffs do adequately disclose what the means-plus-function language means and read the specification, not the figure, to resolve any ambiguity;

a structure disclosed in the specification corresponds to the patent claim pursuant to § 112 ¶ 6 when the specification or the prosecution history clearly links or associates it to the function recited in the claim. *B. Braun Medical, Inc. v. Abbott Labs.*, 124 F.3d 1419, 1425 (Fed.Cir.1997). In a means-plus-function analysis, the details of performing each step need not be included in the claims, nor must the specification describe all possible methods of carrying out each step of the means-function combination. *Texas Instr., Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1562 (Fed.Cir.1986); *D.M.I.*, 755 F.2d at 1574 (holding that to interpret "means plus function" limitations as "limited to a particular means set forth in the specification would be to nullify the provision of § 112 requiring that the limitation shall be construed to cover the structure described in the specification and equivalents thereof."). The Plaintiffs maintain that the specifications clearly define that controller 35 provides the circuit controlling and processing means. I agree; controller 35 is defined in 5:68–6:05 of the '578 patent's specifications. This portion of the specifications states that the preferred construction of the recording and playback system comprises multiple address selectors connected independently to a direct analog storage circuit or controller (35). I therefore find that the circuit controlling and processing means corresponds to controller (35) and is limited only to a direct analog storage circuit. I also find that Figure 2 is consistent with the definition of controller (35) in the specifications.

Applying Claim 3(C)(a) to the Repeater's uncontested construction, I find that this Claim also literally reads Zircon's device. The parties do not dispute that Zircon's ISD chips are direct analog storage devices which control the audio signal recording circuit and processing data. The Repeater's ISD chips are therefore squarely within Claim 3(C)(a)'s scope. Therefore because all of the elements of Claim 3 read on the Repeater, the device literally infringes on the '578 patent as a matter of law.

---

4. Neither the claim, its specifications, nor the patent's prosecution history define "on demand." However, the parties do not appear to contest that a function performed by pushing one button satisfies the on-demand requirement.

## Willful Infringement

For Zircon to have willfully infringed the '578 patent, a reasonably prudent person must have had no reasonable basis for believing it had the right to sell the Repeater. *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540 (Fed.Cir.1984). Zircon must have honestly doubted infringement or validity. *Id.* The Plaintiffs must establish this question of fact by clear and convincing evidence, in view of the totality of the circumstances. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed.Cir. 1995). I find that a question of material fact exists as to the nature of Zircon's basis for its decision to sell the Repeater after notice of the '578 patent. Therefore I deny the Plaintiffs' motion for summary judgment on the issue of willful infringement.

## American's and Riverside's standing

I find that American and Riverside have standing in this suit. They are the exclusive licensees for the '578 patent, and may sue Zircon for infringement as long as the patent's owner, Howes, is also a party. *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed.Cir.1995). Howes is a party and properly granted Riverside an exclusive license which it sublicensed to American.