**VANGUARD PRODUCTS CORPORATION, Plaintiff–Appellee,**

v.

**PARKER HANNIFIN CORPORATION, Defendant–Appellant.**

No. 99–1427.

United States Court of Appeals, Federal Circuit.

Dec. 14, 2000.

Rehearing and Rehearing En Banc Denied Jan. 25, 2001.*

* Circuit Judge Dyk did not participate in the vote.

Robert Neuner, Baker & Botts, L.L.P., of New York, NY, argued for plaintiff-appellee. With him on the brief was Neil P. Sirota.

Gregory A. Castanias, Jones, Day, Reavis & Pogue, of Washington, DC, argued for defendant-appellant. With him on the brief was D. Adam Candeub. Of counsel on the brief was John A. Molnar, Jr., Parker Hannifin Corporation, of Cleveland, OH; and Allen D. Brufsky, of Matlacha, FL.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

Opinion for the court filed by PAULINE NEWMAN, Circuit Judge. Dissenting opinion filed by MAYER, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Vanguard Products Corporation, owner of United States Patent No. 4,968,854 (the '854 patent), charged Parker Hannifin Corporation with infringement. After construction of the claims by the district court, the jury held the patent valid and willfully infringed and determined damages. The court entered judgment on the verdicts, enjoined continuing infringement, and denied Vanguard's motions for enhanced damages and attorney fees.[1] Parker Hannifin appeals, stating that the court's claim construction is incorrect and that on the correct construction infringement can not be found. Parker Hannifin does not appeal the jury verdict as based on the district court's claim construction.

## CLAIM CONSTRUCTION

The '854 patent is directed to an electromagnetic interference shielding gasket. Claim 1, the broadest claim, describes the gasket as having two elastomeric layers: a thick inner layer and a thin metal-filled outer layer "integral therewith":

1. In a gasket shield for counteracting electromagnetic interference comprising a flexible gasket element, the improve-

ment wherein said gasket element comprises a relatively thick elastomeric layer of good elasticity and high tear resistance, and a relatively thin elastomeric outer layer integral therewith, said outer layer being metal filled and providing a high degree of attenuation of electrical energy.

The dispositive issue of claim construction is whether the term "integral therewith" requires that the product be made by co-extrusion,[2] the method of manufacture described in the specification. The accused shielding gasket is conceded by Parker Hannifin to contain inner and outer elastomeric layers of the same properties as described and claimed in the '854 patent, but the method of manufacture differs in that for the Parker Hannifin gasket the outer layer is applied to the inner layer by dip-coating.

The district court ruled, on review of the '854 specification, the prosecution history, and a dictionary definition of "integral," that the claimed gasket shield is not limited to manufacture by co-extrusion. The court instructed the jury as follows:

> "Integral" is used here in its ordinary sense to mean formed as a unit with another part, and therefore, "integral therewith" means that the outer layer of the gasket is formed as a unit and in direct contact with the inner layer of the gasket.

Parker Hannifin argues that "integral therewith" requires the use of co-extrusion to manufacture the gasket, the only process shown in the specification, and that a claim not so limited would read on the prior art and would violate the written description requirement of 35 U.S.C. § 112 & 1. Parker Hannifin states that the district court improperly resorted to a dictionary definition of "integral" to broaden the

---

1. *Vanguard Products Corp. v. Parker Hannifin Corp.*, No. 3:95CV1716 (AVC) (D.Conn. March 3, 1999).

2. Co-extrusion is a known method of forming a composition of two materials by forcing

them through a set of appropriately positioned forming dies.

meaning of this term from the context in which it was used. Parker Hannifin also states that the dictionary was improper extrinsic evidence.

■ A dictionary is not prohibited extrinsic evidence, and is an available resource of claim construction. Although a dictionary definition may not enlarge the scope of a term when the specification and the prosecution history show that the inventor, or recognized usage in the field of the invention, have given the term a limited or specialized meaning, a dictionary is often useful to aid the court in determining the correct meaning to be ascribed to a term as it was used. *See Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 955, 55 USPQ2d 1487, 1490 (Fed. Cir.2000); *Multiform Desiccants Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478, 45 USPQ2d 1429, 1432 (Fed.Cir.1998).

■ We discern no error in the district court's determination that "integral" was used in the '854 patent in its ordinary dictionary meaning. *See Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324,-1335, 54 USPQ2d 1289, 1295 (Fed.Cir. 2000) (a dictionary provides objective definition when words are used in their ordinary meaning). The '854 specification shows that the term was used to describe the product, and not as a designation of a specific manufacturing process.

Parker Hannifin argues that the prosecution history shows that the Vanguard inventors viewed co-extrusion as "fundamental" to manufacture of the claimed gasket, thereby imposing this process of manufacture upon the product claims. Parker Hannifin states that the inventors argued the benefits of co-extruded layers in order to overcome the prior art of Zulaf, Severinsen, and Bogan, and thus must be deemed to have disclaimed other methods of producing the gasket. However, review of the prosecution history shows that during examination the examiner as well as the applicant treated the product claims as directed to the product itself, and examined the application accordingly. For ex-

ample, in responding to the Zulaf reference the inventors pointed out that the Zulaf product was porous while theirs was solid, and pointed to other differences between the claimed and reference products. In addition, the inventors distinguished the Severinsen and other references in the Information Disclosure Statement based on the structure and composition of the products. Severinsen, for example, describes a metal-filled elastomer embedded with knitted wire mesh, and was criticized by the inventors for its poorer performance and higher cost. The examiner did not cite any reference directed to co-extrusion or the method of manufacture.

The prosecution history shows that the inventors extolled the economy of manufacture and superior product made by co-extrusion, and told the examiner that "our system requires only a one-step process as a result of the co-extrusion and tri-extrusion process." However, the prosecution history does not support Parker Hannifin's argument that the Vanguard inventors "expressly disclaimed" claim scope beyond products made by co-extrusion. Patent claim 10 specifically describes the gasket layers as "co-extruded." The district court correctly declined to read this limitation into claim 1. *See Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288 (Fed.Cir.1987) (claims containing different limitations are presumed to be of different scope).

■ The method of manufacture, even when cited as advantageous, does not of itself convert product claims into claims limited to a particular process. We agree with the district court that the word "integral" describes the relationship between the elastomeric layers, not the means of joining them. This word did not limit the claim to the manufacturing process set forth in the specification. A novel product that meets the criteria of patentability is not limited to the process by which it was made. *See* 3 Donald S. Chisum, *Chisum*

*on Patents* § 8.05, at 8–79 (2000) and cases cited therein.

Parker Hannifin states that the district court inappropriately relied on *Serrano v. Telular Corp.,* 111 F.3d 1578, 42 USPQ2d 1538 (Fed.Cir.1997), and failed to correctly apply *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 34 USPQ2d 1673 (Fed.Cir.1995), in its claim construction. These criticisms are not well founded. The *Serrano* litigation concerned both a product (system) and a process, and also involved "means-for" terms under 35 U.S.C. § 112 & 6. The district court herein correctly recognized these differences and correctly applied the reasoning of *Serrano* to distinguish product and method limitations. In *Southwall* the claims required a "sputter-deposited dialectic," thereby including the sputter-deposit method as an explicit limitation in the invention as it was claimed. This is analogous to claim 10 of the '854 patent. However, the co-extrusion limitation is not included in claim 1.

We discern no error in the district court's reading of the patent and its prosecution history, and application of law and precedent. We conclude that the district court correctly construed claim 1 in the instruction to the jury. On this claim construction the jury verdict is not appealed. The judgment entered thereon is affirmed.

### Procedural Issues

Vanguard raises several criticisms of Parker Hannifin's trial procedures. None has been shown to warrant appellate intervention, on the record presented to us.

No costs.

*AFFIRMED*

MAYER, *Chief Judge,* dissenting.

I would reverse. The district court relied on the plain meaning of the term "integral therewith" and properly refused to read the limitations of the preferred embodiment, i.e., co-extruded inner and outer layers, into the claims. However, "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs. v. Cardinal IG Co.,* 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir.1995) (citations omitted). Vanguard submitted its supplemental amendment before the notice of allowance issued, and argued that the amended claims were patentable over Zulauf because, *inter alia,* "[t]he Zulauf system is at least a two-step manufacturing process.... Our system requires only a one-step process as a result of the co and tri-extrusion process, and will therefore be more cost effective with regard to labor input." Through this response, Vanguard effectively disclaimed all but one-step processes, thereby precluding a claim construction of "integral therewith" that embraces any configuration which is "formed as a unit." Vanguard argues that the amendment was not required to secure allowance of the original claims because the notice of allowance did not refer to the supplemental amendment. This is irrelevant because Vanguard chose to amend its claims rather than wait for a response to its request for reconsideration, and the amendment was filed prior to the issuance of the notice of allowance. The arguments distinguishing the amended claims over the prior art are part of the prosecution history that the public has a right to rely on in determining the scope of the claims. *See Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1303, 41 USPQ2d 1364, 1368 (Fed. Cir.1997).

When the term "integral therewith" is properly construed to mean an inner and outer layer "formed as a unit through a single step process," the CHO–SEAL 3000 gaskets, which were produced by a multi-step dipping process to add the outer layer to the premade silicone core, lack the "integral therewith" limitation and thus do not literally infringe Claims 1, 3–6, and 9 of the '854 patent. We have held that "by

distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection." *Ekchian,* 104 F.3d at 1304, 41 USPQ2d at 1368 (citations omitted). The same statements in the supplemental amendment that limited the claim construction of "integral therewith" to mean "formed as a unit through a single step process" act as an estoppel barring the application of the doctrine of equivalents to the material that was surrendered during prosecution, namely inner and outer layers of gaskets formed as a unit through a multi-step process. Infringement by the doctrine of equivalents should not have been submitted to the jury because prosecution history estoppel bars expanding the claims to include the gaskets with an outer layer formed by dipping as in the CHO–SEAL 3000.